1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEREMIAH O'NEAL and CINDY L.
BUCKLES,

                   Plaintiffs,

    v.

JAMES HARDIE BUILDING
PRODUCTS, INC.,

                  Defendant.

CASE NO. 3:20-cv-05168-BHS-MLP

ORDER

14

15

16

17

18

19

20

21

22

     This matter comes before the Court on the Report and Recommendation ("R&R"),

Dkt. 54, of the Honorable Michelle L. Peterson, United States Magistrate Judge,

recommending that the Court deny Defendant James Hardie Building Products, Inc.'s

Motion for Summary Judgment, Dkt. 42. James Hardie objects to the R&R. Dkt. 56.

//

//

//

//

//

1

# I.  DISCUSSION

2

## A.  Standard of Review

3      A district judge must determine de novo any part of the magistrate judge's

4 disposition to which a party has properly objected.[1] The district judge may accept, reject,

5 or modify the recommended disposition; receive further evidence; or return the matter to

6 the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection

7 requires specific written objections to the findings and recommendations in the R&R.

8 *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

9      Nevertheless, objections to an R&R are not an appropriate vehicle to rehash or re-

10 litigate the points considered and resolved by the magistrate judge. *See, e.g.*, *El Papel*

11 *LLC v. Inslee*, No. 20-cv-01323 RAJ-JRC, 2021 WL 71678, at *2 (W.D. Wash. Jan. 8,

12 2021) ("Because the Court finds that nearly all objections are merely a rehash of

13 arguments already raised and decided upon by the Magistrate Judge, the Court will not

14 address each objection here."); *Aslanyan v. Herzog*, No. 14-cv-0511 JLR, 2014 WL

15 7272437, at *1 (W.D. Wash. Dec. 17, 2014) (rejecting a challenge to a magistrate judge's

16 report and recommendation when "all of [plaintiff's] objections simply rehash arguments

17 contained in his amended opening memorandum or in his reply memorandum"). As

18 courts in other districts have recognized and explained, such re-litigation is not an

19 efficient use of judicial resources.

20

21

---

22      [1] The facts are set forth in the R&R and need not be repeated.

1    There is no benefit to the judiciary "if the district court[] is required to review the

2    entire matter *de novo* because the objecting party merely repeats the arguments rejected

3    by the magistrate. In such situations, this Court follows other courts that have overruled

4    the objections without analysis." *Hagberg v. Astrue*, No. CV-09-01-BLG-RFC-CSO,

5    2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009). In short, an objection to a magistrate

6    judge's findings and recommendations "is not a vehicle for the losing party to relitigate

7    its case." *Id.*; *see also Conner v. Kirkegard*, No. CV 15-81-H-DLC-JTJ, 2018 WL

8    830142, at *1 (D. Mont. Feb. 12, 2018); *Fix v. Hartford Life & Accident Ins. Co.*, CV 16-

9    41-M-DLC-JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases);

10   *Eagleman v. Shinn*, No. CV-18-2708-PHX-RM (DTF), 2019 WL 7019414, at *4 (D.

11   Ariz. Dec. 20, 2019) ("[O]bjections that merely repeat or rehash claims asserted in the

12   Petition, which the magistrate judge has already addressed in the R&R, are not sufficient

13   under Fed. R. Civ. P. 72.").

14   **B.    Duty to Provide a Safe Workplace under the Common Law and WISHA**

15        The R&R concludes that a genuine issue of material fact exists as to whether

16   James Hardie, as the jobsite owner, retained sufficient control over the manner in which

17   Casey Industrial, Inc.—Jeremiah O'Neal's employer—performed its work to be liable for

18   O'Neal's injuries. Dkt. 54 at 8. In so doing, the R&R reasons that there is evidence in the

19   record indicating that James Hardie's knowledge of workplace safety, particularly about

20   the use of fall protection surrounding skylights, was superior to Casey's. *Id.* James Hardie

21   objects, arguing that the R&R, by focusing on its knowledge of workplace safety

22   standards, applies the wrong test for determining whether it owed a duty of care to

O'Neal under either the common law or the Washington Industrial Safety and Health Act of 1973 ("WISHA"), RCW Ch. 49.17. Dkt. 56 at 3–5.

"At common law, a principal who hires an independent contractor is not liable for harm resulting from the contractor's work. In particular, the principal has no duty to maintain a safe workplace for a contractor's employees and is not liable for their injuries." *Afoa v. Port of Seattle*, 176 Wn.2d 460, 476 (2013) (internal citation omitted). "An 'independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'" *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 119 (2002) (en banc) (quoting Restatement (Second) of Agency § 2(3) (Am. L. Inst. 1958)).

Accordingly, under Washington common law, when jobsite owners "retain control over a work site," they "have a duty to maintain safe common work areas." *Afoa*, 176 Wn.2d at 475 (citing *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 331–32 (1978); *Kamla*, 147 Wn.2d at 121–22). Put differently, "the relevant inquiry is whether the principal retained control over the work site, not whether there was a direct employment relationship between the parties." *Afoa*, 176 Wn.2d at 477.

Notably, a jobsite owner's common law duty to provide a safe workplace is limited in two significant ways. First, "[c]ommon law liability for injuries to independent contractors and their employees exists where control is retained over *the manner* in which the work is completed." *Kamla*, 147 Wn.2d at 127 (emphasis added). This means that liability does not exist when a jobsite owner "'has merely a general right to order the

1   work stopped or resumed, to inspect its progress or to receive reports, to make

2   suggestions or recommendations which need not necessarily be followed, or to prescribe

3   alterations and deviations.'" *Id.* at 121 (quoting Restatement (Second) of Torts § 414 cmt.

4   c (Am. L. Inst. 1965)). Indeed, "'[s]uch a general right is usually reserved to employers,

5   but it does not mean that the contractor is controlled as to his methods of work, or as to

6   operative detail.'" *Id.* (quoting Restatement (Second) of Torts § 414 cmt. c).

7         Second, when a principal retains control over the manner in which an independent

8   contractor performs its work, the principal has a duty merely "*within the scope of that*

9   *control* . . . to provide a safe place of work.*" Kelley*, 90 Wn.2d at 330 (emphasis added);

10  *accord Farias v. Port Blakely Co.*, 22 Wn. App. 2d 467, 475 (2022).

11        A jobsite owner may also owe a duty to comply with WISHA regulations to the

12  employees of an independent contractor. The standard for determining whether a jobsite

13  owner owes such a duty under WISHA is the same standard that is applied for

14  determining whether a jobsite owner owes a duty to provide a safe workplace under

15  common law. Specifically, "when a jobsite owner retains control over *the manner* in

16  which an independent contractor performs its work, the jobsite owner owes a duty to

17  comply with WISHA regulations." *Farias*, 22 Wn. App. 2d at 477–78 (emphasis in

18  original) (citing *Kamla*, 147 Wn.2d at 125; *Afoa*, 176 Wn.2d at 473). Furthermore, a

19  jobsite owner owes a duty under WISHA to the employees of an independent contractor

20  only to the extent that the work performed by the independent contractor falls within the

21  jobsite owner's scope of control. *See id.* at 498–99.

22

1    Having clarified when a jobsite owner owes both a common law duty to provide a

2    safe workplace and a statutory duty to comply with WISHA, the Court determines

3    whether a genuine issue of material fact exists as to whether James Hardie owed either of

4    these duties to O'Neal. The R&R concludes that a genuine issue of material fact exists as

5    to whether James Hardie retained sufficient control over the manner in which Casey

6    performed its work to owe a duty to O'Neal under the common law and WISHA. Dkt. 54

7    at 8. In so doing, the R&R reasons that "a factfinder could conclude that Hardie was as

8    knowledgeable as a general contractor about safety standards, and that it held supervisory

9    authority over safety on its jobsite." *Id.* at 7.

10    But the degree to which James Hardie's knowledge of safety standards compared

11    to that of a general contractor has no bearing on whether it owed a duty to O'Neal under

12    either the common law or WISHA. It is true that the Washington Supreme Court has

13    addressed the disparity that may exist between general contractors and jobsite owners

14    with regard to their knowledge of WISHA compliant work conditions. *See Kamla*, 147

15    Wn.2d at 124–25. However, the Court has made clear that the test for determining a

16    jobsite owner's liability under both the common law and WISHA is whether the jobsite

17    owner retains sufficient control over the manner in which the independent contractor

18    performs its work. *Id.* at 121–22, 125. Therefore, James Hardie is correct that evidence of

19    its knowledge about safety standards does not mean that it owed a duty to O'Neal under

20    the common law or WISHA.

21    The R&R also reasons that, "[t]he more a jobsite owner takes on a role analogous

22    to a general contractor, the more likely a factfinder will impose liability." Dkt. 54 at 7.

However, the Washington Court of Appeals has declined to follow this reasoning. *See Neil v. NWCC Invs. V, LLC*, 155 Wn. App. 119, 131–32 (2010). In *Neil*, the guardian and parents of an injured worker argued that a jobsite owner, "through its agent, [the injured worker's employer], acted in a manner similar enough to a general contractor to justify imposing a nondelegable duty to ensure WISHA compliance." *Id.* at 131. The court rejected this argument, explaining that "[t]he relevant distinction between an agent and an independent contractor is whether the owner has the right to control the method or manner in which the work was to be done." *Id.* at 132 (cleaned up) (quoting *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co.*, 125 Wn. App. 227, 236–37 (2005)). Therefore, the extent to which a jobsite owner acts like a general contractor is immaterial to whether the jobsite owner owes a duty to provide a safe workplace under the common law or WISHA.

Nevertheless, the R&R correctly concludes that a genuine issue of material fact exists as to whether James Hardie owed a duty to O'Neal under both the common law and WISHA. In April 2018—which was prior to O'Neal's injuries—James Hardie's safety representative, Kevin Johnson, informed Casey through an e-mail that its employees will be expected to follow a James Hardie safety policy regarding the use of fall protection gear when there is a fall hazard of more than six feet:

> All
>
> On April 24 the Tacoma 2 site will be "going live" as we'll be turning on power. At that point, the site will officially switch hands and become a James Hardie managed site. Although construction will continue, *the James*

*Hardie safety policies will become the site expectations. Both Casey and James Hardie employees will be expected to follow these basic rules.*

. . . .

- *Fall protection required above 6 feet using self-retracting lifelines only (JH)*[2]

Dkt. 48-7 at 129 (emphasis added).

Viewed in the light most favorable to O'Neal, this e-mail indicates that James Hardie retained or exercised some control over the manner in which Casey employees performed any work that exposed them to a fall hazard of six feet or more by requiring them to be properly equipped to fall protection under such circumstances. As such, it indicates that James Hardie retained or exercised control over the manner in which O'Neal performed his work near the skylight through which he fell.

Indeed, O'Neal's father, Mitchell O'Neal, testified that, on the morning of the incident, he was working at the "Tac 2" site when "the Hardie people" asked Casey to send workers onto the roof to put a "boot" around a duct penetration to fix a leak. Dkt. 48-10 at 8–10. Mitchell then directed O'Neal and another Casey employee, Joshua Hernandez, to install the boot. Dkt. 49-2 at 7. The duct penetration was approximately 18 inches from a skylight. *Id.* at 5. The skylight was "unguarded," meaning that there were no rails or guardrails surrounding it or covers or screens on it. *Id.* at 10, 13. The skylight also posed a fall hazard of at least 30 feet. *See id.* at 8. And although O'Neal wore a

---

[2] The meaning of the "(JH)" in this e-mail is not apparent from the record. In any event, viewing this e-mail in the light most favorable to O'Neal, it indicates that James Hardie required Casey employees to use fall protection gear whenever they worked in an area where they were presented with a fall hazard of more than six feet.

safety harness, he testified that there was "no rat line installed or anything like that" to which he could tie off. Dkt. 48-11 at 5. Because O'Neal was exposed to a fall hazard of at least 30 feet when working to fix the leak, Johnson's e-mail raises a genuine issue of material fact as to whether James Hardie, under these circumstances, owed O'Neal a common law duty to provide a safe workplace and a statutory duty to comply with WISHA regulations.

Therefore, the R&R is ADOPTED insofar as it concludes that a genuine issue of material exists as to whether James Hardie owed to O'Neal both a common law duty to provide a safe workplace and a statutory duty to comply with WISHA. The Court DECLINES to adopt the R&R insofar as it reasons that James Hardie owed these duties to O'Neal because of evidence indicating both that it was as knowledgeable as a general contractor about safety standards and that it took on a role analogous to a general contractor. These are not the correct tests for determining whether a jobsite owner owes such duties to an independent contractor's employees. James Hardie's motion for summary judgment on this issue is DENIED.

## C.    Premises Liability

The R&R concludes that genuine issues of material fact exist regarding O'Neal's premises liability claim. Dkt. 54 at 12. James Hardie objects, arguing that, because Casey created the dangers at issue, it is not liable for O'Neal's injuries. Dkt. 56 at 9. James Hardie also asserts that O'Neal's premises liability claim fails because he does not raise a genuine issue of material fact as to whether James Hardie should have expected him to fail to identify the skylight as a fall hazard. *Id.* at 10–11.

1   As the R&R explains, "[t]he Washington Supreme Court has 'adopted sections

2   343 and 343A of the *Restatement Second of Torts* to define a landowner's duty to

3   invitees.'" Dkt. 54 at 9 (quoting *Kamla*, 147 Wn.2d at 125). Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his
> invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the
>     condition, and should realize that it involves an unreasonable risk of
>     harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will
>     fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

Next, section 343A states, in part:

> (1) A possessor of land is not liable to his invitees for physical harm caused
>     to them by any activity or condition on the land whose danger is known
>     or obvious to them, unless the possessor should anticipate the harm
>     despite such knowledge or obviousness.

*Id.* § 343A.

James Hardie first asserts that it is not liable for O'Neal's injuries under a

premises liability theory because Casey "created the dangers at issue." Dkt. 56 at 9 (citing

*Hymas v. UAP Distrib., Inc.*, 167 Wn. App. 136 (2012)). In *Hymas*, the court explained

that a landowner's responsibility for the condition of his or her land does not make the

landowner liable for any "defects [that] are due to the imperfect and negligent work of

the contractor himself." 167 Wn. App. at 161 (quoting *Phillips v. Kaiser Aluminum &*

*Chem. Corp.*, 74 Wn. App. 741, 748 (1994)). According to James Hardie, Casey "created

the danger to Plaintiff by failing to adhere to its own Safety Plan, to identify the fall-hazard via required work Job Safety Analysis, and to follow its own fall prevention training." Dkt. 56 at 9. However, whether there exists "a defective or dangerous condition in the premises" is a separate inquiry from whether there is "work being performed on the premises in a negligent or dangerous way." *Phillips*, 74 Wn. App. at 748–49. As the R&R correctly reasons, the defect or dangerous condition in question was the unguarded skylight, which existed before Casey began working at the jobsite. *See* Dkt. 54 at 11–12. Accordingly, *Hymas* is of no aid to James Hardie.

James Hardie also contends that the R&R improperly concludes that a fact issue exists with regard to whether it should have expected that O'Neal would fail to identify the skylight as a fall hazard. Dkt. 56 at 10–11. James Hardie contends that "Casey Industrial's own employees testified in their depositions that they failed to complete the Job Safety Analysis report." Dkt. 56 at 10. According to the deposition testimony of Robert Saunders, a Casey employee, such reports are designed to "take[] you through the steps to get you to the end result, so what are you about to do, what are the hazards, how are you going to mitigate those hazards, and you always have to make sure that everyone understands that is part of that task." Dkt. 43 at 111. Saunders also agreed that these reports are "supposed to be done before any construction task is started by Casey personnel." *Id.*

Assuming O'Neal and Hernandez were required, and failed, to conduct a job safety analysis report before fixing the leak in question, it is not clear from the record whether James Hardie should have expected such a report to identify the skylight as a fall

hazard. As the R&R explains, Hernandez testified that he and O'Neal, in fact, noticed the

skylights on the roof, but that he "'thought [the skylights] were stronger than what they

are," and that he and O'Neal "'didn't really think [they were] going to fall through it.'"

Dkt 54 at 10 (quoting Dkt. 43 at 131, 133). It is not apparent from the record whether a

job safety analysis report would have changed their conclusion regarding the strength of

the skylights. Indeed, a report generated by William Martin, a registered architect and

certified workplace safety expert, described the skylight as "an acrylic skylight that was

intended to melt and provide a smoke vent in the event of a fire." Dkt. 49-2 at 9. This

indicates that the material used on the skylights may have appeared stronger than it

actually was. Furthermore, images of the skylights on the roof from a safety alert issued

by Casey following the incident do not clearly demonstrate that the skylights did not

appear strong enough to hold the weight of a person:

 

Dkt. 43 at 140.

Viewed in the light most favorable to O'Neal, this evidence indicates that the hazard posed by the skylight was not so apparent that James Hardie should have expected O'Neal to recognize it.

Therefore, the R&R is ADOPTED insofar as it concludes that genuine issues of material fact exist regarding O'Neal's premises liability claim. James Hardie's motion for summary judgment on this claim is DENIED.

## II.     ORDER

(1)     The R&R, Dkt. 56, is **ADOPTED in part and DECLINED in part**;

(2)     James Hardie's motion for summary judgment, Dkt. 42, is **DENIED**.

Dated this 16th day of December, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge